**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**Markeisha Deboe-Clark,**

**Plaintiff,**

**v.** **Case No. 26-2337-JWL**

**U-Haul International, Inc. and**
**U-Haul Co. of Kansas, Inc.,**

**Defendants.**

**MEMORANDUM & ORDER**

Plaintiff Markeisha Deboe-Clark filed this lawsuit against defendants asserting employment-related claims of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This matter is presently before the court on defendants' motion to compel arbitration and to stay this case pending arbitration (doc. 4). As set forth in more detail below, defendants' motion is granted.

## I. Standard

The Federal Arbitration Act (FAA) provides that an arbitration provision in a written contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. Courts apply state-law principles concerning the validity, revocability, and enforceability of contracts, as long as those state-law principles are generally applicable to all contracts and not only to arbitration agreements. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). The parties agree that Kansas law supplies the

applicable state-law principles in this case. If a party disputes the existence of an agreement to arbitrate, a court may grant a motion to compel arbitration if there is no genuine issue of material fact regarding the parties' agreement. *See Hancock v. American Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012).

## II. Background

Plaintiff alleges that she was jointly employed by defendant U-Haul International, Inc. and defendant U-Haul Co. of Kansas, Inc. (collectively, "U-Haul") beginning in May 2018, when she began working at U-Haul's facility in Kansas City, Kansas. Pamela Young is employed by U-Haul as a manager in human resources. Ms. Young avers that she is familiar with U-Haul's arbitration agreements, including those in place at the time of plaintiff's employment. According to Ms. Young, at all times relevant to plaintiff's employment, U-Haul required all employees to agree to arbitration as a condition of employment. Specifically, U-Haul required employees, during the application process, to agree to a Notice to Prospective Employees About U-Haul's Employment Dispute Resolution Policy (the "Pre-EDR"). This Notice also contained the "U-Haul Employee Agreement to Arbitrate" which was electronically signed by prospective employees. U-Haul also required employees, after accepting a position of employment, to agree to a Notice to Employees About U-Haul's Employment Dispute Resolution Policy (the "Post-EDR"). This Notice also contained the separate "U-Haul Employee Agreement to Arbitrate" which was electronically signed by employees.

Both the Pre-EDR and the Post-EDR Notices contain language explaining the parties' disputes will be resolved through mandatory, binding arbitration. In pertinent part, the Notice states:

> U-Haul hopes that you will never have a dispute relating to your employment here. Yet, we recognize that disputes sometimes arise between an employer and its employees relating to the employment relationship. We also recognize that not every dispute can be successfully resolved informally. U-Haul believes that it is in the best interests of the employees and U-Haul to resolve those disputes in an arbitration forum which provides a fast and fair method for resolving them. . . . Therefore, U-Haul has adopted and implemented this Employment Dispute Resolution Policy ("EDR").
>
> * * * *
>
> <u>Your decision to accept employment or to continue employment with U-Haul constitutes your agreement to be bound by the EDR</u>. U-Haul also agrees to be bound by the EDR. This mutual obligation to arbitrate claims means that both you and U-Haul are bound to use the EDR as the only means of resolving any employment-related disputes. This mutual agreement to arbitrate claims means that both you and U-Haul forego any right either may have to a judge or jury trial on claims relating in any way to your employment. . . .

*Id*. at 1 (emphasis in original). The "U-Haul Employee Agreement to Arbitrate" portion of the Notice states, in relevant part:

> I acknowledge that I have received and reviewed a copy of the U-Haul Employment Dispute Resolution Policy ("EDR"), and have been advised to consult a legal advisor of my own choice about the EDR. I understand that, unless otherwise required by law or contract, final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against U-Haul Holding Company or its predecessor, or its subsidiary or affiliated companies or entities, and each of its and/or their employees, officers, directors or agents ("U-Haul") and that, by agreeing to use arbitration to resolve my dispute, both U-Haul and I agree to forego any right we each may have had to a judge or jury trial on issues covered by the EDR. . . .
>
> * * * *

> I acknowledge that in exchange for my agreement to arbitrate, U-Haul also agrees to submit all claims and disputes it may have with me to binding arbitration. . . . I further acknowledge that this mutual obligation to arbitrate may not be modified or rescinded except by a written statement signed by both parties.
>
> * * * *
>
> Finally, I acknowledge that nothing in this agreement changes or in any way modifies my employment-at-will relationship with U-Haul; that is either U-Haul or I can end the employment relationship at any time for any reason not prohibited by law.

*Id.*

Ms. Young also avers that she is familiar with plaintiff's personnel records. According to Ms. Young, plaintiff was initially hired by U-Haul in May 2018 as an assembler. Plaintiff electronically signed U-Haul's Pre-EDR and Arbitration Agreement on May 4, 2018 (Doc. 4-1, Ex. A) and she electronically signed U-Haul's Post-EDR and Arbitration Agreement on May 8, 2018 (Doc. 4-1, Ex. B). Ms. Young further avers that plaintiff's employment was terminated in August 2020 due to a facility closure. That same month, plaintiff was rehired as a full-time Production Specialist. Plaintiff electronically signed U-Haul's Pre-EDR and Arbitration Agreement on August 23, 2020 (Doc. 4-1, Ex. C) and she electronically signed U-Haul's Post-EDR and Arbitration Agreement that same day (Doc. 4-1, Ex. D). Plaintiff resigned her employment in September 2024. She was rehired by U-Haul on January 14, 2025 as an assembler. Plaintiff electronically signed U-Haul's Pre-EDR and Arbitration Agreement on January 14, 2025 (Doc. 4-1, Ex. E) and she electronically signed U-Haul's Post-EDR and Arbitration Agreement that same day (Doc. 4-1, Ex. F). These facts are undisputed by plaintiff.

Plaintiff alleges in her complaint that she was subjected to race discrimination and retaliation during her most recent employment with U-Haul.

## III. Discussion

Defendants have moved the court to compel arbitration of plaintiff's Title VII claims in light of the arbitration agreement executed by plaintiff. According to defendants, the parties agreed that the FAA would govern the application of the agreement and the parties' agreement is clearly valid and enforceable under the FAA and plaintiff's claims fall within the scope of that agreement. *See Cavlovic v. J.C. Penney Corp.*, 884 F.3d 1051, 1057 (10th Cir. 2018) (courts analyze two issues prior to compelling arbitration under the FAA—whether an agreement exists that provides the moving party the right to compel arbitration and whether the claims in the complaint fall within the scope of the agreement).

In her opposition to the motion to compel, plaintiff makes several arguments against arbitration.[1] First, plaintiff contends that no agreement to arbitrate exists because the agreement is not signed by a company representative. This argument is rejected. The arbitration agreement does not require the parties' signatures for execution and the plain language of the agreement unequivocally provides that "U-Haul agrees to be bound" by the agreement. In fact, the agreement expressly recognizes the parties' mutual intent to create a binding agreement to arbitrate their disputes:

> This mutual obligation to arbitrate claims means that both you and U-Haul are bound to use the [Employment Dispute Resolution] as the only means of resolving any employment-related disputes. This mutual agreement to arbitrate claims also means that both you and U-Haul forego any right either may have to a judge or jury trial on claims relating in any way to your employment.

---

[1] Plaintiff does not dispute that if a valid agreement to arbitrate exists, then her claims are covered by it.

Clearly, U-Haul is bound by the agreement. *Compare Huckaba v. Ref-Chem., L.P.*, 892 F.3d 686, 689-90 (5th Cir. 2018) (where arbitration agreement contained statement that "by signing this agreement the parties are giving up any right they may have to sue each other" and contained a signature block for employer, employer did not meet its burden of showing that it intended to be bound in absence of signed agreement) *with Uszak v. AT&T Mobility Services LLC*, 658 Fed. Appx. 758, 764 (6th Cir. 2016) (finding that the MAA "binds both parties to arbitrate" and that manifestation of mutual assent existed); *Bolden v. AT & T Servs., Inc.*, 350 F. Supp. 3d 1029, 1033 (D. Kan. 2018) (manifestation of mutual assent existed where arbitration policy language indicated that the employer was also bound to submit disputes to arbitration); *see also Unified Sch. Dist. No. 446 v. Sandoval*, 295 Kan. 278, 289 (2012) (formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration; each party must accept the essential terms of the contract and outwardly communicate the acceptance in a way reasonably intended to be understood as such).

Plaintiff next argues that defendants cannot compel arbitration because neither entity is mentioned or identified anywhere in the arbitration agreement. Essentially, plaintiff contends that neither defendant is a party to the agreement. The court rejects this argument. The arbitration agreements that are pertinent to plaintiff's claims here (Doc. 4-1, Ex. E & F) states as follows:

> You have been hired by U-HAUL HOLDING COMPANY, its predecessor or one of its subsidiaries or affiliates. **As a condition of employment, you are subject to a policy that requires mandatory, binding arbitration of disputes for all employees**. This memorandum explains the procedures, as well as how the arbitration policy works as a whole. Please take the time to read this material. IT APPLIES TO YOU. It will govern all existing or future disputes between you and U-Haul Holding Company or its subsidiary, or affiliated companies or entities, and each of its any/or their employees, officers, directors or agents ("U-Haul") that are

> related in any way to your employment except for charges filed with the National Labor Relations Board.

The agreements, then, expressly include as parties any subsidiaries or affiliated companies of U-Haul Holding Company.

Defendants filed their Corporate Disclosure Statement on August 11, 2026 (doc. 6). That disclosure indicates that defendant U-Haul Co. of Kansas, Inc. is a wholly owned subsidiary of defendant U-Haul International, Inc. and that defendant U-Haul International, Inc., in turn, is a wholly owned subsidiary of U-Haul Holding Company. Plaintiff does not dispute any facts stated in the corporate disclosure statement and does not direct the court to any case law suggesting that defendants are not parties to the agreement in these circumstances. The plain language of the arbitration agreements, coupled with the corporate disclosure statement identifying the parties' interrelationships, provide sufficient support for the conclusion that both defendants are parties to the arbitration agreements. *See Colombia v. Experian Info. Sols*., No. 24-CV-02522-NYW-SBP, 2025 WL 2430015, at *11 (D. Colo. Aug. 22, 2025) (defendant could enforce arbitration agreement where it was undisputedly an "affiliate" entity of entity named in agreement and agreement expressly included as parties all "affiliates" of named entity); *Martin v. H&R Block, Inc*., No. 6:21-CV-520-WWB-LHP, 2022 WL 22868457, at *18 (M.D. Fla. June 8, 2022), *report and recommendation adopted*, No. 6:21-CV-520-WWB-LHP, 2022 WL 22868458 (M.D. Fla. Sept. 22, 2022) (where arbitration agreement expressly defines all parties that are bound by arbitration to include "direct or indirect parents, subsidiaries, affiliates, predecessors, and successor entities, including without limitation any H&R Block business entity for which

Associate applied for employment and/or was employed," agreement by its terms covered all defendants).

Relying on the Tenth Circuit's decision in *Dumais v. American Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002), plaintiff next argues that the arbitration agreement is illusory because defendant retained the right to modify it at any time while binding plaintiff to arbitration. As a threshold matter, defendant argues that this issue is one for the arbitrator to decide. At first glance, Tenth Circuit precedent appears to support defendant's argument. The Circuit has held in some contexts that illusoriness is an issue for the arbitrator. In *In re Cox Enterprises, Inc. Set-top Cable Television Box Antitrust Litigation*, 835 F.3d 1195 (10th Cir. 2016), the plaintiffs argued that because the parties' agreement allowed the defendant to modify it at any time (meaning the defendant could unilaterally modify the agreement's arbitration clause), the defendant's promise to arbitrate was illusory and the arbitration clause was therefore unenforceable. *See id*. at 1209. The Tenth Circuit held that although the plaintiffs might have been correct in that argument, the issue was one for the arbitrator, not the courts. *See id*. The court explained that the Supreme Court had held in its *Prima Paint* decision (regarding a claim of fraud in the inducement of the agreement) and had confirmed in its *Buckeye* decision (regarding an issue of illegality of contract) that "the arbitrator, not a court, should determine whether a contract including an arbitration provision is enforceable." *See id*. at 1210-11 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) and *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)).

The Tenth Circuit in *Cox* then concluded that because the illusory-promise argument was based on a right to modify that was found outside the agreement's arbitration language and that applied to the agreement as a whole and not merely to the arbitration provision, the plaintiffs were

effectively challenging the enforceability of the entire agreement and not merely that of the arbitration provision, as "the arbitration provision would be unenforceable only if the entire agreement is unenforceable." *See id*. at 1211.

The *Cox* court further noted that the Tenth Circuit had previously addressed and resolved "whether an arbitration agreement was unenforceable because one party's promise was illusory" in *Dumais* and in the subsequent case of *Hardin v. First Cash Financial Services, Inc*., 465 F.3d 470 (10th Circ. 2006). *See Cox*, 835 F.3d at 1212. Both of those cases, however, involved separate and distinct arbitration agreements rather than arbitration provisions that were part of larger, unitary contracts. The *Cox* court distinguished *Hardin* as a case that seemingly involved only a distinct contract to arbitrate, which meant that the *Hardin* court's decision to resolve the issue was consistent with the Supreme Court's *Prima Paint* opinion. *See id*. But the Circuit also emphasized that neither *Dumais* nor *Hardin*

> considered, or even cited, *Prima Paint* or *Buckeye* (which postdated *Dumais*). An opinion is not binding precedent on an issue not addressed in the opinion. *See Planned Parenthood of Kansas & Mid–Missouri v. Moser*, 747 F.3d 814, 830–35 (10th Cir. 2014) (distinguishing precedents which do not consider the disputed issue). Therefore, we are free to follow the clear commands of the Supreme Court and leave to the arbitrator to resolve Plaintiffs' "illusory" argument.

*Id.*

Here, defendant has not addressed or even mentioned the Circuit's pertinent decisions on the issue, including *Cox*, *Dumais*, and *Hardin*. Without any case law or argument from defendant, the court concludes, consistent with the distinction drawn in *Cox*, that it will resolve whether the agreement is illusory because plaintiff's argument is aimed solely at the separate arbitration agreement. *See Lockard v. EYM King of Kansas, LLC*, No. 17-2181-JAR-JPO, 2017 WL

4012203, at *4-5 & n.20 (D. Kan. Sept. 12, 2017) (where arbitration agreement was a separate, stand-alone agreement, court would resolve issue of whether it was illusory; distinguishing plaintiff's alternative argument concerning inconsistency with handbook provisions as one that would go to arbitrator because argument was based on contention that arbitration agreement was part of larger contract—the handbook) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co*., 388 U.S. 395, 404 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 1204, 1210 (2006) ("a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); *In re Cox Enters., Inc. Set-top Cable Tele. Box Antitrust Litig*., 835 F.3d 1195, 1211–12 (10th Cir. 2016) (finding argument that contract is illusory goes to the contract as a whole where it is based on language outside of the arbitration provision)).

The arbitration agreement contains no language giving defendant any discretion to modify the terms of the arbitration agreement. It clearly states that the "mutual obligation to arbitrate may not be modified or rescinded except by a written statement signed by both parties." Despite this language, plaintiff contends that because defendants were "able to and did discharge Plaintiff, issue a new agreement (with the option of including new terms) and rehire Plaintiff requiring her to sign the new argument as a condition of rehire," then the arbitration agreement was essentially subject to unilateral modification by defendants. Plaintiff directs the court to no case law supporting her theory and the court rejects it. The arbitration agreement here expressly retains the parties' at-will employment relationship. The mere fact that plaintiff or defendants terminated the employment relationship on one or more occasions did not render the executed arbitration agreement illusory. *See Williams v. Allstate Claims Office*, No. 21-CV-02115-TC-GEB, 2022 WL 138409, at *4 (D. Kan. Jan. 14, 2022) (defendant's decision to terminate plaintiff did not

indicate that arbitration agreement was illusory or that defendant unilaterally rescinded the arbitration agreement where arbitration agreement did not modify the parties at-will employment relationship); *Lauro Hinojosa v. Strategic Sec. Corp.*, No. EP-20-CV-00315-FM, 2021 WL 2767297, at *2 (W.D. Tex. May 13, 2021) (rejecting plaintiffs' argument that defendant's ability to terminate them on an at-will basis rendered the arbitration agreement illusory as it gave defendant "the ability to unilaterally walk away from any and all obligations under the contract"; arbitration agreement expressly stated that it could only be modified upon a signed writing).

Finally, plaintiff suggests that she is exempt from the FAA as a transportation worker. The FAA provides an exemption for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This exemption does not apply to all workers engaged in interstate commerce. The United States Supreme Court has explained that this exemption must be "afforded a narrow construction," and "exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001) (noting that "the location of the phrase 'any other class of workers engaged in . . . commerce' in a residual provision, after specific categories of workers have been enumerated, undermines any attempt to give the provision a sweeping, open-ended construction" (alteration in original)).

The any-other-class-of-workers language is commonly referred to as § 1's residual clause. *Joyner v. Frontier Airlines, Inc.*, No. 25-1211, ___ F.4th ___, 2026 WL 2576779, at *2 (10th Cir. Sept. 1, 2026) (citing *Circuit City*, 532 U.S. at 114-15, *Brock v. Flowers Foods, Inc.*, 121 F.4th 753, 760 (10th Cir. 2024)). The Supreme Court has set forth a two-part framework for determining whether an employment contract containing a mandatory arbitration clause is exempt from the

FAA under the residual clause. *Id.* (citing *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022); *Brock*, 121 F.4th at 760). Under that framework, the court first defines the relevant class of workers to which the individual belongs and then determines whether that class of workers is engaged in foreign or interstate commerce. *Id.* (citing *Brock*, 121 F.4th at 760). The first step looks at the "actual work that the members of the class, as a whole, typically carry out." *Id.* (quoting *Saxon*, 596 U.S. at 456). At the second step, "a class of workers is engaged in foreign or interstate commerce only if its members 'play a direct and necessary role in the free flow of goods' across borders." *Id.* (quoting *Saxon*, 596 U.S. at 458); *see also Flowers Foods, Inc. v. Brock*, 608 U.S. 380, 388 (2026) (citing *Saxon* for the following proposition: "[W]e have held that the phrase 'engaged in' interstate commerce in § 1 denotes a 'direct,' 'necessary,' and 'active' role in moving goods across borders." (alteration omitted)).

Plaintiff, as the party opposing arbitration, bears the burden of demonstrating she falls within an exemption under the FAA. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987) (citation omitted). She has come forward with no evidence or even allegations about her job duties that might permit the court to analyze the "actual work" carried out by defendants' assemblers. She makes no substantive argument about how she plays a "direct," "necessary," or "active" role in moving goods interstate. She directs the court to no cases supporting her argument. Her opposition brief on this issue is roughly one-half page in length and contains only generic language about the exemption. Because plaintiff has not come close to meeting her burden, she is not exempt from the FAA under the residual clause.

Because the court grants the motion to compel arbitration, litigation of this action is hereby stayed pursuant to the FAA.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to compel arbitration (doc. 4) is **granted.** The parties are directed to proceed to arbitration of plaintiff's claims. The court will stay the judicial proceedings in this case pending completion of the arbitration process. Counsel for the parties are directed to report to the court in writing no later than **Monday, March 15, 2027** concerning the status of that arbitration in the event that it has not been terminated earlier. Failure to so report will lead to dismissal of this case for lack of prosecution.

**IT IS SO ORDERED.**

Dated this 14th day of September, 2026, at Kansas City, Kansas.

s/John W. Lungstrum
HON. JOHN W. LUNGSTRUM
United States District Judge